**SKAPIK LAW GROUP**
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883
Email: mskapik@skapiklaw.com, gskapik@skapiklaw.com,
bberkley@skapiklaw.com, mfalkenstein@skapiklaw.com

Attorneys for Stormy Cox

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STORMY COX, an individual, | Case No.: 1:24-cv-00878-KES-SAB |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | 1. 42 U.S.C. § 1983 (Illegal Detention) |
| CITY OF PORTERVILLE; OFFICER A. FLORES, an individual; OFFICER SCOTT, an individual; OFFICER MENA, an individual; OFFICER HUGHBANKS, an individual; OFFICER STARLING, an individual; and DOES 1-10, inclusive, | 2. 42 U.S.C. § 1983 (Warrantless Entry) |
| | 3. 42 U.S.C. § 1983 (Excessive force) |
| | 4. 42 U.S.C. § 1983 (Failure to Intercede) |
| | 5. Negligence |
| Defendants. | 6. Assault |
| | 7. Battery |
| | 8. Intentional Infliction of Emotional Distress |
| | **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

1.    Plaintiff STORMY COX for her complaint against Defendants CITY OF PORTERVILLE, and DOES 1-10, whose identities are currently unknown, inclusive, alleges as follows:

///

///

- 1 -

**INTRODUCTION**

2.      This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution in connection with a confrontation between Plaintiff and yet-to-be-identified members of the Porterville Police Department, which is owned and operated by Defendant CITY OF PORTERVILLE.

**PARTIES**

3.      At all relevant times, STORMY COX ("COX"; " PLAINTIFF") was an individual residing in the County of Tulare, California.

4.      At all times relevant, Defendant CITY OF PORTERVILLE ("CITY") is and was a duly organized public entity, form unknown, existing under the laws of the State of California. At all times relevant, the CITY was the employer of DOES 1-8, inclusive, who were various CITY officers and/or supervisorial officers; and DOES 9-10, inclusive, who were managerial, supervisorial, and policymaking employees of the CITY's police department. On information and belief, at all times relevant, DOES 1-10 were residents of the County of Tulare, California. DOES 1-10 are sued in their individual capacity for damages only.

5.      Defendant OFFICER A. FLORES ("FLORES"), whose identity was previously unknown, is an individual and an officer of the Porterville Police Department.

6.      Defendant OFFICER SCOTT ("SCOTT"), whose identity was previously unknown, is an individual and an officer of the Porterville Police Department.

7.      Defendant OFFICER MENA ("MENA"), whose identity was previously unknown, is an individual and an officer of the Porterville Police Department.

8.      Defendant OFFICER HUGHBANKS ("HUGHBANKS"), whose identity was previously unknown, is an individual and an officer of the Porterville Police Department.

9.      Defendant OFFICER STARLING ("STARLING"), whose identity was previously unknown, is an individual and an officer of the Porterville Police Department.

Collectively, the individual defendants are hereinafter referred to as the "OFFICER DEFENDANTS".

10. At all times relevant, the OFFICER DEFENDANTS and DOES 6-10 were duly authorized employees and agents of the CITY, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant CITY.

11. At all relevant times, the OFFICER DEFENDANTS and DOES 6-10 were duly appointed police officers and/or employees or agents of the CITY, subject to oversight and supervision by the CITY's elected and non-elected officials.

12. In doing the acts and failing and omitting to act as hereinafter described, the OFFICER DEFENDANTS and DOES 6-10, inclusive, were acting on the implied and actual permission and consent of the CITY.

13. At all times mentioned herein, each and every CITY defendant was the agent of each and every other CITY defendant and had the legal duty to oversee and supervise the hiring, training, conduct, and employment of each and every other CITY defendant.

14. The true names of defendants DOES 6-10, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct and liabilities alleged herein.

## JURISDICTION AND VENUE

15. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth Amendment of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrence giving rise to this action occurred in the County of Tulare, California.

1

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

2

3    17.    Plaintiff repeats and realleges each and every allegation in paragraphs 1

through 11 of this complaint with the same force and effect as though fully set forth

4    herein.

5    18.    On August 30, 2023, Plaintiff was at her residence in Porterville, CA with

6    her mother and grandmother.

7    19.    Plaintiff's mother called Porterville Police to report that Plaintiff was

8    suffering from a mental health issue. However, Plaintiff denies suffering from a mental

9    health issue on this date. Plaintiff did not know that her mother had called the police on

10   her and did not understand why her mother had called the police on her. Plaintiff and her

11   mother may have had a disagreement earlier in the day, but Plaintiff did not believe it

12   rose to the level that required police intervention.

13   20.    Soon thereafter, two Police Officers employed by Defendant CITY,

14   including FLORES and at least one of the other OFFICER DEFENDANTS showed up to

15   Plaintiff's residence.

16   21.    Once on the scene, the OFFICER DEFENDANTS met Plaintiff's mother

17   outside and briefly discussed the reason for the call.

18   22.    Plaintiff came out of her residence to take her children to school and the

19   OFFICER DEFENDANTS attempted to question Plaintiff before she could enter her car.

20   Plaintiff denied the claims her mother made to the police.

21   23.    Plaintiff also stated that she was not being detained and continually asserted

22   that she would not speak with the OFFICER DEFENDANTS. At this point, the

23   OFFICER DEFENDANTS did not state that Plaintiff was being detained.

24   24.    Plaintiff then walked back towards her residence. The OFFICER

25   DEFENDANTS asked whether they could enter the home. Plaintiff denied the request,

26   went inside and closed the door behind her.

27

28

25.     Throughout these verbal exchanges, Plaintiff remained calm and non-aggressive. The OFFICER DEFENDANTS did not see Plaintiff commit a crime at this point and did not tell Plaintiff that she was under arrest.

26.     One of the OFFICER DEFENDANTS asked Plaintiff's mother about an alternative entrance into the home. Another of the OFFICER DEFENDANTS remained in Plaintiff's driveway while the first OFFICER DEFENDANT, believed to be FLORES, followed Plaintiff's mother through the side gate of the residence into the backyard. He then opened the back sliding door and stepped into Plaintiff's residence.

27.     Plaintiff was visibly sat near the back sliding door, speaking to her child, when FLORES went in and attempted to question her once again. Plaintiff continued to refuse speaking with FLORES and retreated into her room.

28.     At this point, FLORES unlocked Plaintiff's front door to allow in the other OFFICER DEFENDANT.

29.     The OFFICER DEFENDANTS then walked towards Plaintiff's bedroom and Plaintiff attempted to close the bedroom door.

30.     At this same time, one of the OFFICER DEFENDANTS blocked the room entrance with his boot and broke into the door with his shoulder, forcefully pushing Plaintiff back as well.

31.     Once in the room, the OFFICER DEFENDANTS used a myriad of excessive force on Plaintiff, including forcibly bringing her to the ground, slamming Plaintiff's head into the floor, and placing a knee on Plaintiff's shoulder and back, applying severe pressure.

32.     Plaintiff's children were nearby watching the OFFICER DEFENDANTS brutalize Plaintiff.

33.     The OFFICER DEFENDANTS used this force despite Plaintiff not having committed any crime, not threatening force against the officers, and not having been lawfully detained or arrested.

34.     Thereafter, Plaintiff was put into cuffs and taken to jail.

35.     As a result of DEFENDANTS' actions, Plaintiff suffered from left shoulder and chest bone pain. Plaintiff also had to seek medical treatment and undergo CT scans. Additionally, Plaintiff suffered from daily chronic migraines followed by lightheadedness and nausea.

36.     On March 4, 2024, Plaintiff filed a government tort claim against Defendant CITY OF PORTERVILLE ("CITY") for damages arising from the DEFENDANTS' excessive use of force against her. To date, Plaintiff has not received a response to her timely claim.

## FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure (Fourth Amendment)—Illegal Detention (42 U.S.C. § 1983)

(By PLAINTIFF against the OFFICER DEFENDANTS)

37.      PLAINTIFF repeats and realleges each and every allegation in paragraphs 12 through 36 of this complaint with the same force and effect as though fully set forth herein.

38.     The OFFICER DEFENDANTS did not have probable cause to believe that any crime had been committed by Plaintiff at the time of the seizure.

39.     The OFFICER DEFENDANTS also did not have reasonable suspicion to believe that a crime had been committed by Plaintiff at the time of the seizure, and this was not a lawful *Terry* stop or frisk in any event.

40.     The OFFICER DEFENDANTS, and each of them,  nevertheless seized Plaintiff by show of authority, restricting her movement, entering her home, not allowing her to close the room door, and by aggressively seizing her person.

41.     The OFFICER DEFENDANTS, in doing these acts, were acting under color of state law.

42.     Each of the OFFICER DEFENDANTS engaged in the illegal detention of Plaintiff by restraining her without any probable cause or reasonable suspicion, and by

allowing her to remain restrained despite knowing there was no legitimate and lawful basis by which to detain her.

43.    The actions of the OFFICER DEFENDANTS caused Plaintiff general and special damages in an amount to be proven at trial.

44.    The conduct of the OFFICER DEFENDANTS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages against the OFFICER DEFENDANTS.

<u>**SECOND CLAIM FOR RELIEF**</u>

**Unreasonable Search and Seizure—Warrantless Entry (42 U.S.C. § 1983)**

(By PLAINTIFF against the OFFICER DEFENDANTS)

45.    PLAINTIFF repeats and realleges each and every allegation in paragraphs 12 through 44 of this complaint with the same force and effect as though fully set forth herein.

46.    On August 30, 2023, the OFFICER DEFENDANTS entered Plaintiff's residence, even after Plaintiff's explicit refusal to allow them to do so, and deprived Plaintiff of her Fourth Amendment right to be free of unreasonable search and seizures.

47.    One of the OFFICER DEFENDANTS, believed to be FLORES, intentionally conducted an unreasonable search when he entered Plaintiff's backyard and entered the home through the back sliding door. Further, when he unlocked Plaintiff's front door to allow the other OFFICER DEFENDANTS to enter the home.

48.    Another of the OFFICER DEFENDANTS intentionally conducted an unreasonable search when he entered Plaintiff's residence through the front door. Both OFFICER DEFENDANTS did this after Plaintiff explicitly withheld consent for the OFFICER DEFENDANTS to enter her residence.

49.    Plaintiff had a Fourth Amendment right to privacy in her bedroom.

50.    The Fourth Amendment guarantees all persons the right to retreat into their own home without unreasonable governmental intrusion. *Silverman v. United States*, 365 U.S. 505, 511 (1961).

51.    An objectively reasonable officer knew in 2023 that police officers must generally have a search warrant to lawfully enter a home. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).

52.    An objectively reasonable officer knew in 2023 that a physical trespass inside the curtilage or home, no matter how large or small, is a fourth Amendment violation unless an exception to the warrant requirement applies. *Florida v. Jardines*, 569 U.S. 1, 11 (2013) physical trespass on curtilage of home); cf. *United States v. Jones*, 565 U.S. 400, 405 (2012) (physical trespass to chattels).

53.    An objectively reasonable officer knew in 2023 that even when officers have probable cause to effect an arrest, a search warrant is still required to enter a suspect's home. *Payton v. New York*, 445 U.S. 573, 590 (1980).

54.    The OFFICER DEFENDANTS did not have a warrant to enter Plaintiff's residence or bedroom.

55.    The OFFICER DEFENDANTS nevertheless entered Plaintiff's bedroom in order to detain her.

56.    The OFFICER DEFENDANTS did not have reasonable suspicion or probable cause to support a warrantless detention. But even if they did, the OFFICER DEFENDANTS knew or should have known that the Constitution does not permit a warrantless entry into a home to effect an arrest – much less a warrantless arrest where no crime was committed.

57.    There was no exigency or emergency requiring entrance into the bedroom. The OFFICER DEFENDANTS went in simply to detain Plaintiff.

58.    No exception to the Fourth Amendment warrant requirement applied, and The OFFICER DEFENDANTS knew that or should have known that at the time they acted.

59.    The OFFICER DEFENDANTS  nevertheless seized Plaintiff by forcing themselves into her residence and bedroom, beating her, restricting her movement, and seizing her person.

60.    The OFFICER DEFENDANTS, in doing these acts, were acting under color of state law.

61.    The actions of the OFFICER DEFENDANTS caused Plaintiff general and special damages in an amount to be proven at trial.

62.    The conduct of the OFFICER DEFENDANTS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages against the OFFICER DEFENDANTS.

### THIRD CLAIM FOR RELIEF

**Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)**

(By PLAINTIFF against the OFFICER DEFENDANTS)

63.    PLAINTIFF repeats and realleges each and every allegation in paragraphs 12 through 62 of this complaint with the same force and effect as though fully set forth herein.

64.    The unjustified use of force upon PLAINTIFF, bythe OFFICER DEFENDANTS deprived PLAINTIFF of her right to be secure in her persons against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

65.    Specifically, FLORES used unreasonable and excessive force against PLAINTIFF when he smashed through her door, took her to the ground, struck her, placed a knee on her back, slammed her head into the ground, and forcibly restrained her.

66.    Specifically, on information and belief, SCOTT used unreasonable and excessive force against PLAINTIFF when he smashed through her door, took her to the

ground, struck her, placed a knee on her back, slammed her head into the ground, and forcibly restrained her.

67.    Specifically, on information and belief, MENA used unreasonable and excessive force against PLAINTIFF when he smashed through her door, took her to the ground, struck her, placed a knee on her back, slammed her head into the ground and forcibly restrained her.

68.    Specifically, on information and belief, HUGHBANKS used unreasonable and excessive force against PLAINTIFF when he smashed through her door, took her to the ground, struck her, placed a knee on her back, slammed her head into the ground and forcibly restrained her.

69.    Specifically, on information and belief, STARLING used unreasonable and excessive force against PLAINTIFF when he smashed through her door, took her to the ground, struck her, placed a knee on her back, slammed her head into he ground and forcibly restrained her.

70.    The unreasonable use of force by the OFFICER DEFENDANTS deprived PLAINTIFF of her right to be secure in her person against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

71.    As a result, PLAINTIFF suffered extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

72.    As a result of their conduct, the OFFICER DEFENDANTS are liable for PLAINTIFF's injuries, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations.

73.    This use of excessive force was unreasonable under the circumstances because it was without probable cause, and deprived PLAINTIFF of her Fourth Amendment right to be free of unreasonable seizures. PLAINTIFF was not arrested, posed no threat to the officers or anyone else, and was not resisting or obstructing lawful

FIRST AMENDED COMPLAINT

police action, therefore the force used by the OFFICER DEFENDANTS was unnecessary under the circumstances.

74.    In using such excessive force on PLAINTIFF, the OFFICER DEFENDANTS acted intentionally and under color of state law.

75.    The conduct of the OFFICER DEFENDANTS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages against them.

76.    PLAINTIFF also seeks attorney fees under this claim.

### FOURTH CLAIM FOR RELIEF

**Unreasonable Search and Seizure - Failure to Intervene (42 U.S.C. § 1983)**

(By PLAINTIFF against the OFFICER DEFENDANTS)

77.    PLAINTIFF repeats and realleges each and every allegation in paragraphs 12 through 76 of this complaint with the same force and effect as though fully set forth herein.

78.    The unjustified use of force upon PLAINTIFF by the OFFICER DEFENDANTS deprived PLAINTIFF of her right to be secure in her persons against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

79.    The unreasonable use of force by the OFFICER DEFENDANTS deprived PLAINTIFF of her right to be secure in her person against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

80.    Furthermore, each of the OFFICER DEFENDANTS had a duty to intervene in unconstitutional uses of excessive force by each of the other defendants against PLAINTIFF, and each of them failed to do so.

81.    Specifically, the OFFICER DEFENDANTS each observed at least one of the other OFFICER DEFENDANTS use force against PLAINTIFF despite PLAINTIFF

never threatening or posing a threat towards any person or herself, nor committing any crime in their presence.

82.     The OFFICER DEFENDANTS each observed at least one of the other OFFICER DEFENDANTS violate PLAINTIFF'S constitutional rights by forcefully bringing the Plaintiff to the ground, digging their knee into her shoulder, and slamming her head into the ground.

83.     Despite having ample opportunity to intervene in the obviously unconstitutional uses of force against PLAINTIFF, who was not accused or being investigated for any crime at the time, the OFFICER DEFENDANTS stood by and simply observed or even encouraged the uses of force against PLAINTIFF by the other OFFICER DEFENDANTS.

84.     As a result, PLAINTIFF suffered extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

85.     As a result of the conduct of the OFFICER DEFENDANTS, they are liable for PLAINTIFF's injuries because they failed to intervene in each of the other defendants' unconstitutional acts.

86.     This use of excessive force was unreasonable under the circumstances because it was without probable cause, and deprived PLAINTIFF of her Fourth Amendment right to be free of unreasonable seizures. PLAINTIFF was not arrested, posed no threat to the officers or anyone else, and was not resisting or obstructing lawful police action, therefore the force used by the OFFICER DEFENDANTS was extremely unnecessary under the circumstances.

87.     In using such excessive force on PLAINTIFF, the OFFICER DEFENDANTS acted intentionally and under color of state law.

88.     The conduct of the OFFICER DEFENDANTS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and therefore warrants the imposition of exemplary and punitive damages as to the OFFICER DEFENDANTS.

89.     PLAINTIFF also seeks attorney fees under this claim.

## FIFTH CLAIM FOR RELIEF

### Negligence (Cal. Govt. Code § 820)

(By PLAINTIFF against all Defendants)

90.     PLAINTIFF repeats and realleges each and every allegation in paragraphs 12 through 89 of this complaint with the same force and effect as though fully set forth herein.

91.     The actions and inactions of the defendants were negligent and reckless, including, but not limited to:

a.     The failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against PLAINTIFF;

b.     The negligent tactics and handling of the situation with PLAINTIFF;

c.     The negligent detention and use of force, including potentially deadly force, against PLAINTIFF;

d.     The failure of the CITY and its supervisors and policymakers to properly train and supervise employees, both professional and non-professional, including the nonsupervisory OFFICER DEFENDANTS;

e.     The negligent handling of evidence and witnesses.

92.     As a direct and proximate result of the Defendants' conduct as alleged above, and other undiscovered negligent conduct, PLAINTIFF was caused to suffer extreme mental and physical pain and suffering, emotional distress, and loss of enjoyment of life.

93.     The CITY is vicariously liable for the wrongful acts of the OFFICER DEFENDANTS pursuant to California Government Code § 815.2, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

FIRST AMENDED COMPLAINT

94. The conduct of the OFFICER DEFENDANTS inclusive, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of PLAINTIFF, entitling PLAINTIFF to an award of exemplary and punitive damages.

## SIXTH CLAIM FOR RELIEF

### Assault

(By PLAINTIFF against all Defendants)

95. PLAINTIFF repeats and realleges each and every allegation in paragraphs 12 through 94 of this complaint with the same force and effect as though fully set forth herein.

96. On August 20, 2023, PLAINTIFF was outside of her residence attempting to get inside of her car to take her children to school. The OFFICER DEFENDANTS asked to speak with PLAINTIFF and she asserted her right to not speak with or answer the OFFICER DEFENDANTS.

97. PLAINTIFF stated that the OFFICER DEFENDANTS **did not** have consent to enter PLAINTIFF's residence without a warrant. Then PLAINTIFF retreated into her home and locked the door.

98. One of the OFFICER DEFENDANTS, believed to be FLORES, who is an officer in the CITY's police department, entered the residence anyway by entering PLAINTIFF's side gate through to the backyard. FLORES then opened PLAINTIFF's back sliding door and stepped into PLAINTIFF's kitchen to attempt speaking with PLAINTIFF once again.

99. FLORES did this intending to cause harmful contact to PLAINTIFF who refused to answer any of the OFFICER DEFENDANTS'' questions which is well within PLAINTIFF's constitutional rights.

100. PLAINTIFF went into her home and locked the door because she reasonably believed that the OFFICER DEFENDANTS were about to touch her in a harmful or offensive manner.

101.  PLAINTIFF did not consent to the conduct of the OFFICER DEFENDANTS.

102.  Still, the OFFICER DEFENDANTS broke into her room, forcibly brought her to the ground, dug a knee into her shoulder, and slammed her head into the floor.

103.  The conduct of the OFFICER DEFENDANTS was a substantial factor in causing PLAINTIFF's harm.

104.  The conduct of the OFFICER DEFENDANTS was intentional, despicable, malicious, and oppressive and was done with a willful, wanton, and conscious disregard for PLAINTIFF's rights.

105.  The CITY is vicariously liable for the acts of the OFFICER DEFENDANTS pursuant to California Government Code section 815.2(a), which provides that a public entity is liable for the injuries proximately caused by an act or omission of an employee of the public entity within the scope of their employment if the act or omission would have given rise to a cause of action against that employee.

## SEVENTH CLAIM FOR RELIEF

### Battery

### (By PLAINTIFF against all Defendants)

106.  PLAINTIFF repeats and realleges each and every allegation in paragraphs 12 through 105 of this complaint with the same force and effect as though fully set forth herein.

107.  On August 30, 2023, PLAINTIFF was forcibly brought to the ground and brutalized by the OFFICER DEFENDANTS who are police officers for the Defendant CITY's Police Department.

108.  PLAINTIFF did not consent to this touching by the OFFICER DEFENDANTS.

109.  Once on the ground, the OFFICER DEFENDANTS dug a knee into Plaintiff's shoulder and back, applying severe pressure while she was in a prone position, and slammed her head into the floor.

110.   The conduct of the OFFICER DEFENDANTS was a substantial factor in causing PLAINTIFF's harm.

111.   The conduct of the OFFICER DEFENDANTS was intentional, despicable, malicious, and oppressive and was done with a willful, wanton, and conscious disregard for PLAINTIFF's rights.

112.   The CITY is vicariously liable for the acts of the OFFICER DEFENDANTS pursuant to California Government Code section 815.2(a), which provides that a public entity is liable for the injuries proximately caused by an act or omission of an employee of the public entity within the scope of their employment if the act or omission would have given rise to a cause of action against that employee.

## EIGHTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By PLAINTIFF against all Defendants)

113.   PLAINTIFF repeats and realleges each and every allegation in paragraphs 12 through 112 of this complaint with the same force and affect as though fully set forth herein.

114.   On August 30, 2023, the OFFICER DEFENDANTS unlawfully entered Plaintiff's residence, broke into her room, and effected an arrest with excessive force.

115.   The OFFICER DEFENDANTS used extreme and excessive force that caused PLAINTIFF to sustain injuries, including, but not limited to, injuries to her back and head.

116.   PLAINTIFF was not arrested or charged, and the OFFICER DEFENDANTS were responding to a non-emergency call. At no point during the interaction was PLAINTIFF a

threat to any person, including the OFFICER DEFENDANTS. The OFFICER DEFENDANTS decided to use excessive force upon PLAINTIFF as a purely punitive measure and to exact extrajudicial punishment upon her.

117. The OFFICER DEFENDANTS acted in an outrageous way by unlawfully and forcefully breaking into PLAINTIFF's residence and bedroom and beating her without cause.

118. The OFFICER DEFENDANTS acted with reckless disregard to the probability that PLAINTIFF would suffer emotional stress from such an outrageous and excessive use of force on her person, despite no criminal activity being afoot.

119. As an actual and proximate result of the OFFICER DEFENDANTS' conduct, PLAINTIFF suffered severe emotional distress.

120. The conduct of the OFFICER DEFENDANTS was intentional, despicable, malicious, and oppressive and was done with a willful, wanton, and conscious disregard for PLAINTIFF's rights.

121. The CITY is vicariously liable for the acts of the OFFICER DEFENDANTS, pursuant to California Government Code section 815.2(a), which provides that a public entity is liable for the injuries proximately caused by an act or omission of an employee of the public entity within the scope of their employment if the act or omission would have given rise to a cause of action against that employee.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF requests an entry of judgment in his favor and against Defendants CITY OF PORTERVILLE, OFFICER A. FLORES, OFFICER SCOTT, OFFICER MENA, OFFICER HUGHBANKS, OFFICER STARLING, and DOES 6-10, inclusive, as follows:

A.    For Compensatory damages in the amount to be proven at trial;

B.    For general and special damages;

C.    For exemplary and punitive damages against the individual defendants in an amount to be proven at trial;

D.    For statutory damages pursuant to California Civil Code § 52(b)(3);

E.    For interest;

F.    For reasonable costs of this suit and attorneys' fees; and

G.   For such other further relief as the Court may deem just, proper, and appropriate

SKAPIK LAW GROUP

Dated: May 19, 2025                              By:   */s/Matthew T. Falkenstein*
                                                       Mark J. Skapik
                                                       Geralyn L. Skapik
                                                       Blair J. Berkley
                                                       Matthew T. Falkenstein
                                                       Attorneys for Plaintiff
                                                       STORMY COX

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury.


SKAPIK LAW GROUP


Dated: May 19, 2025                                By:    */s/Matthew T. Falkenstein*
                                                          Mark J. Skapik
                                                          Geralyn L. Skapik
                                                          Blair J. Berkley
                                                          Matthew T. Falkenstein
                                                          Attorneys for Plaintiff
                                                          STORMY COX

FIRST AMENDED COMPLAINT